UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. |
| | : | |
| ONE PARCEL OF PROPERTY | : | |
| LOCATED AT 350 NORTH STREET, | : | |
| WINDSOR LOCKS, CONNECTICUT, | : | |
| WITH ALL APPURTENANCES AND | : | |
| IMPROVEMENTS THEREON; | : | |
| | : | |
| $41,904 IN UNITED STATES | : | |
| CURRENCY, | : | |
| | : | |
| Defendants. | : | April 5, 2018 |
| | : | |
| [CLAIMANTS:  CHRISTINE MILES; | : | |
| OSCAR MONTOYA; JP MORGAN | : | |
| CHASE, N.A.] | : | |

<u>VERIFIED COMPLAINT OF FORFEITURE</u>

Now comes Plaintiff, United States of America, by and through its attorneys, John H.

Durham, United States Attorney for the District of Connecticut, and David X. Sullivan, Assistant

United States Attorney, and respectfully states that:

1.  This is a civil action <u>in rem</u> brought pursuant to 21 U.S.C. § 881(a)(7), for the

forfeiture of real property located at 350 North Street, Windsor Locks, Connecticut ("Defendant

Property") which was used or intended to be used in any manner or part to commit or to facilitate

the commission of a violation of the Controlled Substances Act, 21 U.S.C. §§ 801 <u>et</u> <u>seq.;</u> and

pursuant to 21 U.S.C. § 881(a)(6) for the forfeiture of $41,904 in United States Currency which

represents proceeds that were derived from the sale of illegal narcotics in violation of the

Controlled Substances Act, 21 U.S.C. §§ 801 et seq.

2.  This Court has jurisdiction over this matter by virtue of 28 U.S.C. § 1345 and § 1355.

3.  Venue in the District of Connecticut is appropriate pursuant to 28 U.S.C. § 1355 and § 1395.

4.  The Defendant Currency is located within the jurisdiction of this Court.

5.  The Defendant Property is one parcel of real property located at 350 North Street, Windsor Locks, Connecticut, with all appurtenances and improvements thereon.

6.  The United States does not request authority from the Court to seize the Defendant Property at this time.  The United States will, as provided by 18 U.S.C. §§ 985(b)(1) and (c)(1):

a.    post notice of this action and a copy of the Complaint on the Defendant Property;

b.    serve notice of this action on the record owner of the Defendant Property, and any other person or entity who may claim an interest in the Defendant Property, along with a copy of this Verified Complaint of Forfeiture;

c.    execute a writ of entry for the purposes of conducting an inspection and inventory of the property; and

d.    record a lis pendens on the Windsor Locks Land Records of the Defendant Property's status as the Defendant in this in rem action.

7.    The United States will also, as provided by 19 U.S.C. § 1606, appraise the Defendant Property when it executes the Writ of Entry.

8.    The Defendant Property was purchased for $229,900 by Christine Miles and Oscar Montoya from B.C. Construction, LLC, via Warrantee Survivorship Deed, recorded August 7, 2003, at Volume 307, Page 1014 of the Windsor Locks Land Records.

9.      JP Morgan Chase, N.A. may have an interest in the property through a mortgage recorded on May 20, 2015.

10.     The appraised value of the Defendant Property is $298,300.

BACKGROUND OF INVESTIGATION

11.      Law enforcement gathered intelligence from confidential sources in the Windsor Locks, Connecticut area that indicated Christine MILES and her husband Oscar MONTOYA of 350 North St., Windsor Locks, Connecticut ("Defendant Property") were involved with the illegal sale of prescription narcotics, and other controlled substances, for several years.

**Controlled Purchase #1**

12.      A first controlled purchase of narcotics occurred during March of 2016, after a registered confidential informant ("CI-1"), advised law enforcement that he/she had purchased drugs from individuals who resided at the Defendant Property. CI-1 advised law enforcement that Christine MILES and her daughter, Christy MILES, were selling, Xanax, and other prescription medications in the Windsor Locks area and directly from the Defendant Property.  CI-1 also told law enforcement that Christy MILES was selling heroin in addition to the other narcotics.  During the first week of March 2016, law enforcement arranged to have CI-1, accompanied by an undercover officer ("UC"), attempt to purchase Vicodin and heroin from Christy MILES at the Defendant Property. Upon the arrival of CI-1 and the UC in the driveway of the Defendant Property, Christy MILES exited the Defendant Property and approached the passenger side of the UC vehicle. Christy MILES handed CI-1 a plastic bag that contained Vicodin and heroin in exchange for recorded law enforcement funds which were handed to Christy MILES by the UC.  While being recorded on audio/video, Christy MILES explained to

3

CI-1 and the UC that her mother (Christine MILES) gets various pills sent to her at the Defendant Property via Federal Express from relatives in various parts of the country, and that the deliveries occur four times per month and usually contain 150 tablets each of Percocet, Vicodin, and Xanax. Christy MILES then provided the UC with her phone number for future narcotics transactions.

**Controlled Purchase #2**

13.     In July of 2016, law enforcement established a second CI ("CI-2"), who indicated that he/she had been purchasing controlled substances from Christine MILES. Law enforcement arranged to have CI-2 purchase Xanax directly from Christine MILES at the Defendant Property. Upon the arrival at the Defendant Property, surveillance units watched as CI-2 was met at the front door by Christine MILES. Both CI-2 and Christine MILES entered the Defendant Property. A short time later, CI-2 exited the Defendant Property, returned to his/her vehicle, and traveled directly to the pre-arranged post-buy meeting location. During this controlled purchase, CI-2 received Xanax tablets in exchange for recorded law enforcement funds.

**Controlled Purchase #3**

14.     During the week of August 1, 2016, law enforcement arranged to have CI-2 purchase Oxymorphone (Opana) from Christine MILES at the Defendant Property. Surveillance units watched CI-2 travel directly to the Defendant Property and enter the front of the home. A short time later, CI-2 exited the Defendant Property, returned to his/her vehicle, and traveled directly to the pre-arranged post buy meeting location. During this controlled purchase, CI-2 purchased Oxymorphone 10mg tablets in exchange for recorded law enforcement funds.

15.     After the third controlled purchase by law enforcement from Christine MILES, the North Central Narcotics Task Force discussed possible financial assistance from the Drug Enforcement Administration ("DEA") to attempt to purchase larger quantities of illicit drugs from Christine MILES.

**Execution of State of Connecticut Search and Seizure Warrant at 350 North Street, Windsor Locks**

16.     On August 4, 2016, the North Central Narcotics Task Force with some assistance from the DEA executed a State of Connecticut Search and Seizure Warrant at the Defendant Property.  During the search, law enforcement seized approximately 1,829 tablets of Opana 40mg (Oxymorphone), 61 tablets of Opana 20mg, 60 tablets of Opana 10mg,  20 tablets of Dilaudid 2mg (Hyrdromorphone), 46 tablets of Oxycodone 20mg, 25 tablets of Oxycodone 10mg, 40 tablets of Oxycodone 5mg, 43 tablets of Oxycodone 5mg/Acetaminophen 325mg, 3 tablets of Hydrocodone 7.5mg/Acetaminophen 500mg, 360 tablets of Hydrocodone 7.5mg/Acetaminophen 325mg, 63 tablets of Hydrocodone 7.5mg/Acetaminophen 300mg, 2 Suboxone 12mg strips, 43 Suboxone 8mg sublingual strips, 2 Suboxone 8mg sublingual strips, 55 Methadone 10mg tablets, 390 tablets of Clonazepam (Klonopin), 16 tablets of Alprazolam (Xanax), and approximately two pounds of marijuana.  Law enforcement also seized $10,093.00 United States Currency, and 91 gift cards whose aggregate values total $13,199.47.  Most of the gift cards were discovered by law enforcement wrapped in a receipt that reflected the monetary value on the card(s), postal receipts, and other items of evidentiary value. The evidence was seized from the master bedroom of the Defendant Property shared by Christine MILES and MONTOYA as well as a spare room.

17.     The 91 gift cards found in the possession of Christine MILES and Oscar

MONTOYA were from Home Depot, Macy's, Walmart, Sears, JC Penny, Chowder Pot, L.L. Bean, Barnes & Noble, Texas Roadhouse, and Kohl's.  Law enforcement knows that it is not uncommon for individuals engaged in the illegal sale of controlled substances to accept gift cards in lieu of cash in exchange for illicit drugs.

18.     Upon further examination of the Opana tablets discovered at the Defendant Property, law enforcement determined that the majority of the pill containers were labeled with the personal identifying information of Beverly HERNANDEZ of XXXXX XXXX XXXXXX XX., XXXXXXXX, XXXXXXX. These prescription pill containers of the Opana tablets held up to double or triple the quantity that was supposed to be in a bottle.  Law enforcement learned that Beverly Hernandez is Christine Miles' daughter-in-law.

19.     Christine MILES was placed under arrest and transported to the Windsor Locks Police Department and charged with violations of Connecticut General Statutes: 21a-278(b) Possession of Narcotics with Intent to Sell, 21a-277(b) Possession of Controlled Substances with Intent to Sell, 21a-279(b) Possession of Marijuana with Intent to Sell, 21a-277(c) Operating a Drug Factory, and 21a-257 Failure to Keep Narcotics in the Original Container.  Although MONTOYA was not home at the time of the search warrant execution, he was later arrested for the same charges.

20.     At the Windsor Locks Police Department, law enforcement interviewed Christine MILES regarding her involvement with the possession and distribution of narcotics.  In summary, Christine MILES denied having ever sold drugs (including prescriptions drugs). Christine MILES explained that she was unemployed and currently collecting disability income. Christine MILES added that at one time she had a career in nursing and was a licensed

6

Registered Nurse.  She added that her husband, Oscar MONTOYA, worked for the State of Connecticut. Christine MILES explained that she had medical conditions, which she described as "chronic pain," and had been prescribed 30 milligram Opana by Dr. Alan Soroka.

21.     Law enforcement asked Christine MILES why she had so many narcotics inside the Defendant Property that did not belong to her.  Christine MILES explained that her daughter in-law, Beverly HERNANDEZ, had a legitimate prescription for Opana (Oxymorphone) in Florida.  She added that HERNANDEZ's son is a heroin addict who is currently in a residential treatment program. Christine MILES claimed that HERNANDEZ would "deliver" her Opana prescription to Christine MILES in Connecticut to hold for safekeeping so that HERNANDEZ's son would not have access to them.  Officers asked Christine MILES if HERNANDEZ would "deliver" the medication in person, or if she would mail it to her.  Christine MILES explained that HERNANDEZ would deliver in person a few times per year.  Law enforcement then asked what the certified mail receipts found in the Defendant Property were from, and she explained that she mailed HERNANDEZ a "broche."  Christine MILES then later changed her story and explained that HERNANDEZ would mail her prescriptions to her at the Defendant Property.

22.     Incident to execution of the State Search Warrant at 350 North Street, law enforcement also discovered financial and banking records identifying the existence of bank accounts held in the names of Christine MILES and/or Oscar MONTOYA, from Webster Bank, and The First National Bank of Suffield which led to the execution of State of Connecticut Search and Seizure Warrants on Webster Bank and The First National Bank of Suffield that resulted in the seizure of over $700,000.

23.     A Five Count Federal Criminal Indictment was returned on November 9, 2017,
charging Christine Miles, Oscar Montoya, and Christy Miles with violations of the Controlled
Substances Act, 21 U.S.C. § 846 Conspiracy to Distribute and to Possess with Intent to
Distribute Controlled Substances, and 21 U.S.C. § 841 Possession with Intent to Sell and
Distribution of Controlled Substances.  On November 16, 2017, Christine Miles, Oscar Montoya,
and Christy Miles were arrested on the federal charges and presented before the Honorable
Donna F. Martinez, United States Magistrate Judge.  All three were ordered detained prior to
trial.  Jury selection in the criminal case is scheduled for June 1, 2018, with evidence to
commence the next day.  United States v. Christine Miles, et al., 3:17CR242 (JAM).

24.     On February 2, 2018, law enforcement executed a Federal Search and Seizure
Warrant at the Defendant Property while Christine Miles and Oscar Montoya were subject to
pretrial detention in the federal criminal case.  Among the items seized were:  $41,904 in United
States Currency ("Defendant Currency");  three pills packaged for street level sale in a knotted
corner baggie; a prescription bottle in the name of Oscar Montoya labeled as five milligram
oxycodone which actually contained ten milligram pills; and an empty prescription bottle of
Opana 40 milligram pills prescribed to Beverly Hernandez. The narcotics were discovered by
law enforcement in the same location in the Defendant Property where law enforcement found
drugs on August 4, 2016.

25.     During this ongoing investigation, law enforcement learned that Oscar
MONTOYA has been employed by the State of Connecticut for approximately 11 years and is
paid approximately $100,000 annually.  Law enforcement learned that Christine MILES receives

monthly income from Social Security Disability and Social Security Insurance as well as Section 8 rental income from a condominium that she owns in Windsor Locks, Connecticut.

26.     During this investigation, law enforcement also spoke with a confidential source ("CS") who explained that in the past he/she had been a major pill distributor for Christine MILES.  The CS told law enforcement that he/she gave Christine MILES approximately $100,000 in United States Currency annually from the sale of pills that Christine MILES gave to him/her to sell.

27.     A check with the State of Connecticut Department of Labor revealed that Sarah MILES, who resides at the Defendant Property with Christine MILES and Oscar MONTOYA, had no reported wages.  She is one of Christine MILES' daughters.

28.     Law enforcement believes that Christine MILES and Oscar MONTOYA receive their respective legitimate income by paper check rather than through electronic transfers directly into their bank accounts at The First National Bank of Suffield ("FNBS") and at Webster Bank ("Webster").  It appears that MONTOYA and Christine MILES accumulate their checks over a period of months and routinely deposit them in bundles along with co-mingled United States Currency believed to be the proceeds of drug sales, along with other checks at FNBS and/or Webster.

29.     This unusual means of bulk depositing monthly and bi-weekly income was deemed odd by the financial institutions processing the deposits but did not result in the closing of any of their bank accounts.

30.     Monies that were bundled and deposited into accounts at the FNBS and Webster were then transferred to other bank accounts within one financial institution to the other. Ultimately, one of the bank checking accounts utilized by Oscar MONTOYA and Christine MILES was used as the means by which they paid their mortgage and other living expenses.

31.     Law enforcement believes this "bundling" process of legitimate income and commingling it with cash representing drug proceeds, and other checks deposited into FNBS and Webster represent the "placement stage" of money laundering, whereby the successfully placement of "dirty" drug money into a financial institution with the intention of using and/or spending tainted money as if it had originated from legitimate sources, in violation of 18 U.S.C. § 1956(a)(1).

32.     Law enforcement believes that MONTOYA and Christine MILES' transfer of these bundled funds to and from other accounts at FNBS and to Webster represent the second phase of money laundering known as "layering," whereby the dirty money is moved from its original point of origin within a financial institution so as to make it more difficult for bank regulators and law enforcement to track/follow the dirty money that has been placed into the regulated legal banking system.

33.     The use of the comingled dirty money transferred to the checking accounts at Webster and FNBS illustrate MONTOYA and Christine MILES' efforts to successfully execute the final stage of money laundering known as "integration," where the funds return into the legitimate stream of commerce. Checks written from the checking accounts for mortgage payments and other expenses, complete the money laundering cycle, which allows those engaged

in the illegal sale of drugs in violation of the Controlled Substances Act, Title 21 of the United States Code, as well as in violation of the State of Connecticut General Statutes, to conceal their involvement in illegal conduct, and to successfully spend the fruits of their illegal labors by giving the tainted funds the appearance of being legitimate.

<u>CONCLUSION</u>

34.    Based on the above information, it is believed that: $41,904 in United States Currency represent proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 <u>et</u> <u>seq.</u>, and are, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that Warrants of Arrest In Rem be issued for $41,904 in United States Currency; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

35.    The Defendant, one parcel of property located at 350 North Street, Windsor Locks, Connecticut, with all appurtenances and improvements thereon, is subject to forfeiture under 21 U.S.C. § 881(a)(7), for the forfeiture of real property which was used or intended to be used in any manner or part to commit or to facilitate the commission of a violation of the Controlled Substances Act, 21 U.S.C. §§ 801 <u>et</u> <u>seq.</u>

WHEREFORE, the United States of America respectfully asserts that there is probable cause to believe that the Defendant Property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(7); and requests,

11

(a)  that pursuant to 18 U.S.C. § 985(b)(2), and 18 U.S.C. § 983(j), which permits the Court to "take any action to . . . preserve the availability of the property subject to civil forfeiture," the Court issue the proposed Writ of Entry attached to this Verified Complaint of Forfeiture authorizing the United States Marshals Service, or its delegate, to enter the Defendant Property, including any structures, on one or more occasions during the pendency of this in rem forfeiture action:

1. for the purpose of conducting an inspection and inventory and appraisal of the Defendant Property, which inspection and inventory and appraisal may include still and video photography;

2. to be accompanied on any such occasion by any appraiser(s) selected by it to appraise the condition and value of the Defendant Property pursuant to 19 U.S.C. § 1606;

3. to be accompanied on any such occasion by any government or contract personnel selected by it for the purpose of conducting an inventory of the Defendant Property; and

4. to be accompanied on any such occasion by any federal, state, or local law enforcement officers selected by it to ensure the safety of any person acting under the Writ of Entry;

(b)  that the Court enter a decree for the forfeiture of the Defendant, one parcel of property located at 350 North Street, Windsor Locks, Connecticut, with all appurtenances and improvements thereon, to the United States under 21 U.S.C. § 881(a)(7)  is confirmed, enforced, and ordered;

(c) that the Court award Plaintiff United States all other relief to which it is entitled, including the costs of this action.

Respectfully submitted,


JOHN H. DURHAM
UNITED STATES ATTORNEY


   /s/ John B. Hughes
JOHN B. HUGHES
CHIEF, CIVIL DIVISION
ASSISTANT U. S. ATTORNEY


   /s/ David X. Sullivan
DAVID X. SULLIVAN
ASSISTANT U.S. ATTORNEY
157 CHURCH STREET
NEW HAVEN, CT  06510
(203) 821-3700
FEDERAL BAR # ct03793

<u>DECLARATION</u>

I am a Task Force Officer of the Drug Enforcement Administration, United States Department of Justice, and the agent assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 5th day of April, 2018.

  <u>/s/ Christopher Devanney</u>
CHRISTOPHER DEVANNEY
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION

SCHEDULE A

A certain piece or parcel of land situated in the Town of Windsor Locks, County of Hartford and State of Connecticut, known as No. 350 North Street and also known as Lot 1 on a map entitled "Subdivision Map Windsor Locks Farms 344 North Street Windsor Locks, Connecticut Scale 1" = 40' Date October 26, 2001 Milone & MacBroom sm Engineering Landscape Architecture And Environmental Science 716 South Main Street Cheshire, Connecticut 06410 Sheet 3 Of 18 Last Revision October 1, 2002", which map is on file in the Town Clerk's Office in said Town of Windsor Locks to which reference may be had and being more particularly bounded and described as follows:

Northerly          by Lot 9 as shown on said map, 120.55 feet;

Easterly           by Lot 2 as shown on said map, 174.27 feet;

Southerly          by North Street, 121.16 feet; and

Westerly           by land now or formerly of Mary K. Szepanski, 174.31 feet.

Said premises are conveyed subject to any and all provisions of any ordinance, municipal regulation, or public or private law, to utility easements as of record appear, to a Declaration of Protective Covenants and to a notation on the subdivision plan that a portion of this lot is subject to periodic inundation.